CITY OF STOUGHTON, Respondent, vs. POWERS, Appellant.

*September 8—October 6, 1953.*

584

For the appellant there were briefs by *Anna Mae Davis* of Madison, attorney, and *Hayden C. Covington* of Brooklyn, New York, of counsel, and oral argument by *Mrs. Davis.*

For the respondent there was a brief and oral argument by *William E. Chritton* of Stoughton.

MARTIN, J. Sec. 18.57, Revised Ordinances of 1946 of the city of Stoughton, provides:

"*Other disorderly conduct.* Any person who shall be guilty of any noise, boisterous, or disorderly conduct, or any

fighting, . . . within the limits of the city of Stoughton, . . . shall be subject to a fine of not less than one dollar ($1) or more than one hundred dollars ($100) and in default of the payment thereof, by imprisonment in the Dane county jail for not more than three months."

Appellant asserts that the ordinance, by prohibiting "any fighting," is so vague, uncertain, and ambiguous as to be unconstitutional; that, since there are no qualifying words in the ordinance limiting the phrase "any fighting," any conduct such as wrestling, boxing, exhibition matches, riots, duels, affrays, assaults and batteries, and civil war could be denominated "disorderly conduct," and that thus the term fails to inform defendant what conduct will make him liable to its penalties.

It is a basic and well-established rule of construction that words used in statutes (or ordinances) are to be given their common, ordinary, and approved meaning. If such meaning clearly shows what an ordinance intends to require or prohibit, the courts will sustain it.

"Fighting," the act prohibited by the ordinance, has a common and ordinary meaning sufficiently definite to be understood with reasonable certainty by persons of ordinary intelligence. That common and ordinary meaning is well expressed in the old axiom that "It takes two to fight."

"Fight" has been defined as a combat between two persons suggesting primarily the notion of a brawl or unpremeditated encounter, *Gitlow v. Kiely* (D. C. 1930), 44 Fed. (2d) 227; as an altercation for which the participant is in some degree to blame and in which he is, to some extent at least, a voluntary participant, and not that which is unavoidable and beyond his control, or which has not been occasioned by any improper conduct on his part, *Coles v. New York Casualty Co.* (1903), 87 App. Div. 41, 83 N. Y. Supp. 1063. In *State v. Gladden* (1875), 73 N. C. 150, in pointing out the necessity of a mutual intent in fighting, the court said that

it is not necessary that both parties should give and take blows; that it is sufficient that *both parties* put their bodies in a position to give and take blows, and *with that intent.*

The definition of "fighting" thus arrived at—and it is the one used by the trial court in its instructions to the jury—is that which is commonly understood as its meaning, and it cannot be said that the use of the word will mislead or confuse. Wrestling, boxing, duels, affrays, and the other activities mentioned by appellant have their own definitions under the law distinguishable from that of fighting.

Appellant attacks the constitutionality of the ordinance on the further ground that the city of Stoughton has exceeded the authority delegated to it by the state and because the ordinance conflicts with the Wisconsin statutes. Generally, under the powers conferred on it by sec. 62.11 (5), Stats., the city may act "for the government and good order of the city, . . . and for the health, safety, and welfare of the public, and may carry out its powers by . . . fine, imprisonment. . . ." Fighting within the city certainly affects the "good order of the city" and the safety and welfare of the public, and power to prohibit it clearly falls within the acts authorized by this section of the statutes.

Neither can we agree that the city of Stoughton has unlawfully enlarged upon the definition of "disorderly conduct" in sec. 348.35, Stats. The section provides that municipal ordinances may be enacted for the punishment of the same or similar offenses as therein set forth,—"violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly conduct tending to create or provoke a breach of the peace or to disturb or annoy others, whether in a public or a private place. . . ." Appellant contends that in prohibiting "any fighting" the city has created a crime. This contention has no merit. The ordinance shows on its face that violation provides for a forfeiture, and only upon failure to pay the forfeiture, is the defendant liable to imprisonment. This is a

common provision in ordinances of this nature. *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 28 N. W. (2d) 345, cited by the appellant, cannot be construed as he contends.

The claim is also made that complainant, Alfred Elvethun, was not a proper party to make the affidavit for a warrant on behalf of the city of Stoughton, since he was not an officer of the city and could not so act as a private citizen. In *South Milwaukee v. Schantzen* (1950), 258 Wis. 41, 44 N. W. (2d) 628, where the person signing the complaint was actually an officer of the city, the court held that, in order to comply with the provisions of sec. 301.10(4), Stats., the affidavit must state that it was being made on behalf of the plaintiff. The procedure which was followed in the instant case has been approved for many years in this state and elsewhere, and the reasons therefor are plain. As well stated in *Richland v. Null* (1916), 194 Mo. App. 176, 182, 185 S. W. 250, 252:

"If a private individual knows of a violation of a city ordinance we can think of no harm that can be done if he be permitted by complaint to submit to the proper officials a basis for a prosecution. The city's interests can be protected by the proper officials. The complaining party has no such control over the prosecution as will enable him to assume complete and exclusive control of the case. The purpose and definition of the term 'complaint' is not so extensive. On the other hand, if this construction were not adopted opportunities might be more readily offered for impositions on the city and its inhabitants. If the action of some officer who might be absent or dilatory could not be obtained offenders would be given an opportunity to escape if a warrant could not be procured on the complaint of a private citizen."

Appellant argues that the trial court erred in several respects in its instructions to the jury. It is contended that in failing to apprise the jury that appellant had entered a plea of not guilty by reason of self-defense, as well as the general plea of not guilty, the court committed reversible error. The

argument is not sound. Appellant's general plea entitled him to all the defenses available to him, including self-defense.

With respect to the trial court's refusal to instruct the jury on self-defense, we must hold that such refusal was prejudicial error. The issue of self-defense was raised by evidence offered by the appellant and was a proper subject for instructions. In order to answer the question submitted in the verdict, the jury had to decide whether under all the evidence presented appellant had acted in self-defense, and appellant was entitled to an instruction on that issue.

"While the instructions should not go beyond matters put in issue by the pleadings and supported by the proof, they should cover all the material issues thus raised in a case. A court instructing the jury may not ignore or withdraw from the jury issues of fact which are in the case and supported by evidence, a ground of liability, or a proper defense. Nor should it give instructions which tend to or do eliminate an issue properly before the jury and supported by evidence, or exclude from their consideration points which are fairly raised by the evidence on either side." 53 Am. Jur., Trial, p. 458, sec. 581.

Appellant also complains of the refusal to give an instruction on intent. Upon a new trial, the instruction on self-defense will no doubt include an instruction on intent.

We have discussed above the meaning of the term "fighting," and we consider the trial court's instructions thereon sufficient.

*By the Court.*—Judgment reversed and cause remanded for a new trial.