STATE of Missouri, Respondent,

v.

Rex PECK, Appellant.

No. 53109.

Supreme Court of Missouri,
Division No. 2.

June 10, 1968.

Motion for Rehearing or for Transfer to
Court En Banc Denied July 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Glen C. Schomburg, Special Asst. Atty. Gen., Kirkwood, for respondent.

William Barton, Jefferson City, for appellant.

FINCH, Presiding Judge.

Defendant was charged under the Habitual Criminal Act with escaping from the Missouri Penitentiary where he was confined. The trial court made the necessary findings with reference to a prior conviction and the jury found defendant guilty of escape as charged. The court then sentenced defendant to imprisonment for three years. His motion for a new trial was overruled and he appeals.

The evidence will support this narration of facts: On September 11, 1965, defendant was lawfully confined in the Missouri State Penitentiary at Jefferson City. He was serving two consecutive five-year sentences for burglary and for grand stealing, imposed in 1963. On the date charged, officials discovered that two inmates, one of whom was defendant, were missing and they found a tunnel leading from beneath the floor of "D" dormitory to a point outside the prison wall.

At about 1:40 p. m. Sergeant Phillips of the State Highway Patrol observed a car parked alongside the road on Highway 54 south of Jefferson City. One man was inside and the other standing alongside the automobile. Thinking that the men were having car trouble, Sergeant Phillips stopped about 200 feet down the road and started to back to where the car was parked. He observed the two men leave the car and walk toward the fence at the side of the road, and when he turned on his red flasher light the men ran into a wooded area. The Sergeant ascertained by means of his radio that two men had escaped from the Penitentiary, and he then requested that assistance be sent to him, and that bloodhounds be brought from Algoa. Approximately thirty minutes later, the bloodhounds and their handlers arrived, along with a Mr. Bond, who was a guard from the Penitentiary. They started following the trail of the two men who had fled and later, at a point about two miles away, caught up with the two men. Mr. Bond knew and recognized defendant as one of the two men who had escaped from the Penitentiary. The other man with the defendant was Mr. Brodkowicz.

Counsel was appointed for defendant in the Circuit Court prior to arraignment. Counsel thereafter represented the defendant throughout the proceedings in the Circuit Court and on appeal to this court and has been diligent and painstaking in his efforts on behalf of the defendant.

The first question on appeal relates to the sufficiency of the information. It charged an offense under § 557.351 (Laws of Missouri, 1961, p. 331),[1] which provides

---

1. All statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated.

as follows: "Any person sentenced to the state department of corrections upon conviction of escaping or attempting to escape from any state institution in which he was lawfully confined, or from the lawful custody of any person while being transported, shall be sentenced to the department of corrections generally for a term of not less than two and not exceeding five years."

Prior to its repeal in 1961 (when § 557.351 was enacted), § 557.350 provided that, "If any person confined in the penitentiary for any term less than life * * * shall break such prison or custody and escape therefrom, he shall, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding five years * * *." It will be observed that this statute covered escape from the penitentiary only. It was replaced by § 557.351 so as to cover escape from "any state institution in which he was lawfully confined."

The information, after charging a prior conviction, then stated as follows: "That thereafter, on the 11th day of September, 1965, at Cole County, Missouri, the defendant, Rex Peck, was lawfully confined in the Missouri State Penitentiary, an institution under the control of the State Department of Corrections of the State of Missouri, and the said Rex Peck did unlawfully and feloniously escape therefrom and go at large, against the peace and dignity of the State."

■ The contention of the defendant is that the information is bad because it follows the language of a repealed section of the law instead of the language in the statute in effect at the time of the offense. We overrule this contention. The fact that the information did not use the generalized language of the 1961 Act does not make it bad. It alleged specifically the state institution from which defendant was alleged to have escaped and thereby more definitely informed him of the charge with which he was confronted. This did not alter the fact that he still was charged with escaping from a state institution in which he was legally confined, which is what § 557.351 covers. The defendant was not prejudiced by the use of the more specific language. The fact that it happened to be language used in the preceding statute is wholly immaterial under the circumstances.

Defendant next complains that counsel was not appointed for him in the Magistrate Court, although he requested such appointment. The proceedings in the Magistrate Court are not contained in the transcript on appeal, but it does contain a motion filed by defendant in the Circuit Court wherein he sought to have the information quashed and the complaint against him dismissed on the basis that his request for appointment of counsel at the preliminary hearing had been denied.

■ This court has held on numerous occasions that the preliminary hearing under the Missouri procedure is not a critical stage so as to require appointment of counsel. Cases so holding include State v. Durham, Mo., 416 S.W.2d 79; State v. Turley, Mo., 416 S.W.2d 75, and State v. McClain, Mo., 404 S.W.2d 186. It would serve no useful purpose to enter into a lengthy discussion of those cases and the distinction made therein from cases such as White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, and Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. There is nothing in the transcript before us to show that the defendant was prejudiced or deprived of constitutional rights by the absence of counsel at the preliminary hearing. We overrule this contention.

■ The third assignment of error by defendant involves the action of the trial court in overruling challenges for cause of prospective jurors. The defendant challenged certain prospective jurors on the voir dire on the basis that their answers disclosed that they had served as jurors

during the preceding week in a trial in which some other defendant was convicted on a charge of escaping from the institution at which he was confined. No connection with the escape by this defendant is asserted or shown. This prior service, so defendant contends, entitled him to challenge such persons for cause, even though they all stated that they could fairly and impartially serve on the jury. We find no merit in this contention. The fact that a juror, for example, has served on another unrelated murder case is not per se a basis for challenge for cause of that prospective juror in a subsequent murder trial. Similarly, service on a jury in a robbery case does not disqualify one for service in a later robbery trial, and service on a jury in an automobile accident case does not disqualify a juror from service in later automobile accident cases. We find no sound basis for disqualification under such circumstances, and a rule of this nature would be wholly impractical in operation. It would disqualify persons from serving more than once in any particular type of case.

Defendant pleaded not guilty by reason of mental disease or defect. He requested that the court order an examination of him and the court entered such an order, directing that the defendant be examined by doctors at the State Hospital at Fulton. These doctors, however, did not testify at the trial.

In the trial of the case the defendant himself took the stand and testified as to early head injuries which he was permitted to testify affected his speech and his mind. He told of numerous instances when he had been arrested, convicted and imprisoned. These included several federal convictions to be served after completion of his state sentence. He also told of severe injuries received from another inmate while in jail in 1962. He testified that in 1964 he applied to the State Parole Board for probation so as to permit him to commence serving his federal sentences. His request was denied, although he contended that others similarly situated had been given favorable consideration by the Parole Board. He testified that he concluded his only chance to be released was to escape, that this was on his mind constantly and that he thought escaping would be the right thing for him to do. He then started digging on the tunnel through which he escaped several months later.

■ The court gave the jury an instruction on the issue of whether defendant was not guilty by reason of mental disease or defect. Defendant makes the single objection to that instruction that it did not specifically inform the jury that it was permitted to consider the testimony or evidence of a lay witness as to the mental disease or defect of the defendant. In that connection, defendant cites the case of State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, which holds that a lay witness may express an opinion on the insanity of a human being. Actually, defendant offered no lay witness to testify as to mental disease or defect of the defendant. If his own testimony previously mentioned can be considered lay testimony of his own mental disease or defect, the instruction given was broad enough to permit the jury to consider it. Instruction No. 4 told the jury that in determining whether defendant had a mental disease or defect at the time of the offense charged against him, it might take into consideration all facts and circumstances in evidence. This was broad enough to permit the jury to consider the testimony of the defendant on this issue. No expert witness testified on this issue and the instruction as given made no specific reference to expert testimony nor to lay testimony. It simply permitted the jury to consider all facts and circumstances in evidence. This was sufficient and the instruction was not erroneous for failure to single out lay testimony and say specifically that the jury might consider such testimony.

■ Defendant next complains of the admission in evidence of some of his state-

ments which he says were made at a time when he had not been advised of his constitutional rights. The transcript shows that Sergeant Phillips testified that after defendant and his companion Brodkowicz were apprehended, he heard the defendant saying or bragging to Brodkowicz that he had tunnelled out of the Missouri State Penitentiary and he wanted to know how the police officers had been able to find him. Sergeant Phillips specifically testified that this remark was not in answer to or the result of any interrogation of the defendant. He testified, as a matter of fact, that there was no interrogation of the defendant at that time and the only interrogation took place later at Troop "F" Headquarters.

We hold that the admission of this statement was not erroneous. The statement was a voluntary one occurring in conversation between defendant and his companion, did not follow or result from interrogation, and does not fall within the prohibition of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R.3d 974. This subject is discussed more fully in the case of State of Missouri v. Burnett, Mo., 429 S.W.2d 239, decided June 10, 1968. What is said there is applicable likewise to the admission of the statement of which defendant complains.

■ Defendant's brief also makes reference to the alleged admission of a statement by the defendant that, "Well, there went ten months of digging." Actually, the transcript indicates that this statement was testified to out of the presence of and was not actually heard by the jury; but even if it had been, it was a part of the same voluntary conversation between defendant and his companion Brodkowicz and was not in response to interrogation. Its admission would not have been erroneous even if it was heard by the jury.

Next, the defendant complains of alleged inflammatory statements by the prosecuting attorney in his argument to the jury.

In his argument the prosecuting attorney was discussing the defense of mental disease or defect. He referred to certain incidents and then said this: "Is that mental disease or defect? I submit to you it isn't. I submit to you the facts in this case establishing that this man is a criminal. That doesn't mean he is insane. You have heard him talk, if he had any mental disease or defect * * *

"MR. BARTON: Your Honor, we object to the word 'insane.'

"THE COURT: Sustained."

■■ It will be observed that the trial court promptly sustained the objection made by counsel. No other relief was requested, and no further reference to "insane" or "insanity" was made. Under these circumstances, there was no prejudicial error. State v. Davis, Mo., 400 S.W.2d 141, 147[12].

Defendant's brief says that "when the word 'insane' was used and also when the defendant was characterized as a 'criminal' (Tr. p. 101), even without objection upon the part of counsel, the Court had a duty to admonish or declare a new trial." Defendant cites State v. Rhoden, Mo., 243 S.W.2d 75, wherein it was recognized that an argument may be so vicious or prejudicial that the trial judge should act on his own motion. It seems clear to us that what occurred here does not come within the type of situation referred to in Rhoden. Defendant had taken the stand and had himself testified concerning numerous convictions. He had done so in connection with assertion of his defense of not guilty by reason of mental disease or defect. The State's argument was in response thereto. We find no duty on the trial court to act on its own and to do more than he did.

■■ Finally, defendant's motion for new trial and his brief assert that the jurors acted too quickly because only eight minutes elapsed from the time when the case was submitted and when the jury ren-

dered its verdict. The contention is made that this did not give them time to intelligently read the instructions and to properly deliberate and consider the case. There is nothing in the record to establish the correctness of the allegation in the motion for new trial as to the time during which the jury deliberated, but even if there were, we would not find that this would raise a presumption that the jurors failed to heed the court's instructions and to properly consider the case. The court had read the instructions to the jury. The amount of time to be spent in deliberation is a matter for the jury to determine. In State v. Richmond, 321 Mo. 662, 12 S.W.2d 34, 36, this court said:

" * * * The Legislature in its wisdom has seen fit in defining the powers of a jury to declare that 'when the argument is concluded, the jury may either decide in court or retire for deliberation.' Section 4026, R.S. 1919. This statute is but a recognition in other words of the unlimited authority of the jury to determine for themselves whether a deliberation is necessary to enable them to render a verdict. The time they may devote to such deliberation if the same is deemed necessary, is left wholly to their judgment. Something more must appear therefore to warrant an interference with a verdict than an alleged brevity of their deliberations. To hold otherwise would be to interfere with their consideration of the facts, in which they are as independent of the court as the judge is of the jury in determining the law."

In State v. Payne, Mo., 342 S.W.2d 950, this court considered an assignment that a jury did not fairly deliberate on the issues and took an inadequate period of time to determine the verdict when it returned a verdict in twenty minutes in a manslaughter case. The court overruled that contention, pointing out that the trial court, having full knowledge of the trial situation, overruled the motion for new trial which included that ground. The opinion states that this court will defer to that action.

A situation involving a similar question arose in State v. Eckenfels, Mo., 316 S.W. 2d 532, wherein the jury apparently had deliberated twenty minutes in a robbery case. Again, this court refused to disturb the verdict on that basis. We overrule this assignment.

An examination of the record as required by Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All of the Judges concur.